**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **EILEEN D. OLIVE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 2:06-CV-48-MEF** |
| | ) | |
| **H. COUNCILL TRENHOLM STATE** | ) | |
| **TECHNICAL COLLEGE, ANTHONY** | ) | |
| **MOLINA, individually, ROY JOHNSON,** | ) | |
| **individually, BRADLEY BYRNE, in his** | ) | |
| **official capacity as Chancellor of the** | ) | |
| **Alabama Department of Postsecondary** | ) | |
| **Education, SAMUEL MUNNERLYN in his** | ) | |
| **official capacity as Interim President of** | ) | |
| **Trenholm State Technical College,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME NOW the Defendants, H. Councill Trenholm State Technical College, Anthony Molina, Roy Johnson, Samuel Munnerlyn, and Bradley Byrne, by and through their undersigned counsel, in the above-styled cause and hereby file this Brief in Support of their Motion for Summary Judgment.

## I. INTRODUCTION

In this case, the Plaintiff Eileen Olive, a Caucasian female, contends that she was discriminated against when an African American male was selected for a position for which she had applied. Specifically, she contends that though the process set forth in *Shuford*[1] was followed, the members of the committee chosen by President Molina were either not of an appropriate rank to participate in the selection of a person to fill the position in question, that at

---

[1] *Shuford v. Alabama State Board of Education*, 897 F.Supp. 1535 (M.S. Alabama, 1995).

least one of the committee members selected was biased against her or biased in favor of the individual ultimately selected and that at least one of the committee members was indebted to President Molina and therefore selected the applicant she felt he (President Molina) wanted.  Ms. Olive also contends that she was retaliated against because her job title was changed after the selection, her budgetary responsibilities were removed and she had less control over her programs than before.

The Defendants respectfully submit that they have followed the provisions of *Shuford* in all respects in this matter.  A committee was selected by President Molina.  That committee then interviewed the applicants, scored them independently and forwarded the names of the applicants with the top three scores to President Molina who then selected the applicant he felt best suited for the job.  There is nothing in *Shuford* or the guidelines for the search committees based on *Shuford* that requires any particular rank of employee to be on the selection committee.  Finally, there is no evidence of any collusion between President Molina and the search committee members.

The Plaintiff's claims of retaliation are without foundation. The Plaintiff claims that her title was changed to lead teacher after the selection of the African American male.  However, the position for which she applied and for which she was not selected was an administrative position, and the person selected was in charge of four different school systems' Adult Education Programs plus Trenholm's Adult Education Program, effectively creating a consortium.  If there was a change in title for Ms. Olive, the other similarly situated teachers in the other school systems likewise had a change; therefore, there was no discrimination against Ms. Olive.  The budgetary responsibilities of all the individuals involved in this consortium were also centralized in the new position; thus, there was no discrimination against Ms. Olive in this regard. Finally,

any change in control over her program would be as a result of the centralizing of the activities for the Adult Education Program in the new position. Thus, there was no retaliation in this regard. Finally, Ms. Olive's contract showed that she continued to have the same title that she had before the selection and her salary was raised on an annual basis.

In the final analysis, we respectfully submit that there are no material issues of fact in this matter and that summary judgment is appropriate for all the Defendants.

## II. UNDISPUTED FACTUAL SUMMARY

Eileen Olive ("Olive"), a Caucasian female, was hired by H. Councill Trenholm State Technical College ("Trenholm") in February 1996 as leader of the JOBS Adult Education Program. In 2001, Olive was named Supervisor and Coordinator of the Adult Education Program at Trenholm and continues to serve in that position. She has received annual salary increases in her pay without interruption. (Exhibit 1 - Eileen Olive Contracts of Employment 2004-2007).

In 2002, legislation was passed transferring all powers, duties, responsibilities, and functions of the Adult Education Program from the Alabama Board of Education (K-12) to the Postsecondary Education Department. *Ala. Code* §16-60-115 (1975). At the time of the transfer, Roy Johnson ("Johnson"), a Caucasian male, was serving as Chancellor of Postsecondary Education. Following the transfer of Adult Education to Postsecondary, Montgomery Public Schools and H. Councill Trenholm State Technical College entered into a consortium to provide quality adult education services in the Montgomery community. In a joint agreement between Trenholm and the Montgomery County School System, Quinton Ross ("Ross"), an African American male, was hired as an Educational Specialist to assist in the implementation and

facilitation of the Adult Education Consortium.[2] (Exhibit 2 – Educational Specialist Job Description) (Exhibit 3 - June, 2003 Memorandum and Agreement for Education Specialist).  At the time of his appointment as Educational Specialist, Ross was serving as the Principal at Booker T. Washington Magnet High School in Montgomery.  He had a B.S. in Political Science and Master's Degree in Education from Alabama State University, had received Administration Certification and pursued post-graduate work towards a Juris Doctorate at Jones School of Law. (Exhibit 5 - Quinton Ross Professional Educator Certificate) (Exhibit 6 - Quinton Ross Professional Overview).

In July 2004, Trenholm advertised the vacancy of Director of Adult Education, a position that would oversee and administer the Adult Education programs in the Montgomery County Schools, in the Bullock County Schools, Elmore County Schools, Macon County Schools, at McInnis School, and at Trenholm State Technical College.  (Exhibit 7 - Advertisement and Job Description for Director of Adult Education), (Exhibit 8 - Alabama Director's List for Adult Education Programs, 2003-2004, Revised August 30, 2004).  The selection of the Director's position was governed by the uniform procedure as set forth in The Alabama College System Search Committee Guidelines in accordance with the stipulations of the Partial Consent Decrees issued in *Shuford*.

---

[2] Olive testified in her June 4, 2008, deposition that she makes no claim in this lawsuit based on Ross' appointment to the interim position. (Exhibit 4 – Deposition of Eileen Olive, pg. 124, line 3 – pg. 125, lines 5, 13-19.  Olive stated: My case is not relevant to his interim position." "Q.  So you don't have – any part of this lawsuit is not directed towards his obtaining that education specialist – A.  No, Trenholm has that right…"  "Q.  But you're not complaining in this lawsuit about his obtaining the educational specialist job?  A. I did not bring this lawsuit about that.  OK? Q. All right.  A.  That's to be clear."  The Defendants mention this interim appointment in order to differentiate between Ross' interim appointment and his selection for the position of Director of Adult Education that serves as the basis of this lawsuit.

In accordance with the Guidelines[3] (Exhibit 9 - Alabama College System Search Committee Guidelines), a selection committee appointed by then Trenholm President Dr. Anthony Molina ("Molina"), an African American male, screened and interviewed applicants and presented the names of the top three of those interviewed to name the recipient of the Director position. Ross was selected from the top three applicants by Dr. Molina as the new Director of Adult Education. Ross' appointment was approved by Johnson.

Olive filed a Charge of Discrimination with the EEOC on or about February 4, 2005, complaining of race and gender discrimination. (Exhibit 10 – Charge of Discrimination). She was issued a Notice of Right to Sue on or about October 17, 2005, and on January 18, 2006, filed a suit in the Middle District of Alabama alleging that she was discriminated against on the basis of race and gender in being denied the appointment as Director of Adult Education and alleging that the Defendants subsequently modified her position title and job duties in retaliation for her complaints regarding the selection process. (Docket 1) On March 23, 2007, Olive filed a Corrected Amended Complaint (Docket 41), alleging the following claims against Defendants: Count I - Title VII gender discrimination claim against Defendant Trenholm; Count II - Title VII race discrimination claim against Defendant Trenholm; Count III – Fourteenth Amendment and Equal Protection Clause violations via 42 U.S. §§ 1983 and 1985(3) against Defendants Dr. Anthony Molina,[4] Roy Johnson,[5] and Dr. Bradley Byrne.

---

[3] In ¶23 of her Complaint, Olive acknowledges that the Defendants were subject to, and adopted "a Consent Decree regarding the terms and conditions of the hiring process for employees, promoting employees, and the re-organization of departments and employees' positions." Although recognizing that the selection process of the Director of Adult Education was held in accordance with the Partial Consent Decrees issued in *Shuford,* the Plaintiff does not allege she suffered any adverse effect of the use or implementations of the Search Committee Guidelines. Rather, her complaint alleges that the *Shuford* guidelines were not followed in this case. Therefore, the Plaintiff fails to allege a disparate impact cause of action.

[4] Anthony Molina was the President at Trenholm at all times relevant to this lawsuit; however, he died on or about April 7, 2007. The suit stands against Dr. Molina in his individual capacity in Count III of the suit. Samuel

### III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986); see also *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir. 1996). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir.2000) (*en banc*) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir.1995) (internal quotation marks and citations omitted). Furthermore, "[i]n an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion ." *Jameson v. Arrow Co.*, 75 F. 3d 1528, 1531 (11th Cir. 1996).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a

---

Munnerlyn, was substituted for Dr. Molina in Count III in his official capacity as the interim president (and now permanent) of Trenholm.

[5] Dr. Roy Johnson was Chancellor of Postsecondary Education at all times relevant to this lawsuit; however, he has since left that position. The suit stands against Dr. Johnson in his individual capacity in Count III. Dr. Bradley Byrne, now Chancellor of Postsecondary Education, was substituted for Dr. Johnson in his official capacity relative to Count III of this complaint.

genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson,* 252 F.Supp.2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.,* 530 F.2d 657, 660 (5th Cir.1976).

### IV. ARGUMENT

A. DEFENDANT TRENHOLM IS ENTITLED TO SUMMARY JUDGMENT AS TO OLIVE'S TITLE VII CLAIMS (COUNTS I & II) BECAUSE THE PLAINTIFF FAILED TO PRESENT A *PRIMA FACIE* CASE OF DIRECT OR INDIRECT DISCRIMINATION[6]

Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. 2000e-2(a)(1). Two legal theories are operative in analyzing Title VII claims: disparate treatment and disparate impact. Disparate treatment discrimination occurs when "the employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324 and 335 (1977). Disparate impact occurs when an employer's facially neutral policy or practice has a

---

[6] Olive failed to distinguish between those actions constituting race discrimination and those constituting gender discrimination. She repeatedly alleges that she was discriminated against because she is a "white female." "Sex discrimination is evaluated under the same legal standard as race discrimination." *Underwood v. Perry County Com'n,* 431 F.3d 788, 794 (11th Cir. 2005). Therefore, for the purpose of this brief, gender and racial discrimination in Counts I & II will be argued together.

discriminatory impact upon a protected class of employees. Disparate impact cases are usually pled as class actions. In the present case, Olive is the sole plaintiff and does not complain of any facially neutral policy or practice of the Defendants having a discriminatory impact upon a protected class of employees' discriminatory policy. Therefore, the Plaintiff's claim is that of disparate treatment rather than disparate impact.

To state a *prima facie* case of disparate treatment, the employee must plead intentional discrimination by either direct or circumstantial evidence. Generally, plaintiffs can establish employment discrimination under Title VII using the direct evidence framework set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989), or the circumstantial evidence framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under either the direct evidence or circumstantial evidence models, the plaintiff bears the burden of showing that the employer purposely took adverse action against her because of her [race and/or gender]. *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1230 n. 34 (11th Cir. 2001); *Armstrong v. Flowers Hospital,* 33 F.3d 1308, 1314 (11th Cir. 1994).

## 1. <u>Olive failed to establish a *prima facie* case of discrimination</u>.

"[O]nly the most blatant remarks whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2001) (quoted case omitted); *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). Olive did not allege any direct evidence of discrimination in her complaint, her answer to interrogatories, or in her deposition. Therefore, Olive's burden of proof in this case must be established by using circumstantial evidence and the framework first set out by the United States Supreme Court in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir.1985).

In Title VII cases based upon circumstantial evidence, such as the case at bar, the plaintiff initially bears the burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, supra; *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53, 254 (1981).  The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action.  *Burdine,* 450 U.S. at 253.  If the defendant articulates a legitimate, non-discriminatory reason for the employment action, the plaintiff can avoid summary judgment by producing sufficient evidence for a reasonable fact-finder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual.  *Chapman v. AI Transport,* 229 F.3d 1012, 1037 (11th Cir. 2000) (citing *Combs v. Plantation Patterns,* 106 F .3d 1519, 1543 (11th Cir. 1997)).

A plaintiff establishes a *prima facie* case of discrimination under Title VII by showing: (1) she belongs to a "protected" class; (2) she was qualified to do her job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her classification more favorably.  *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997) (citing *McDonnell Douglas,* 411 U.S. at 802); see also *Armstrong,* 33 F.3d at 1314 (describing the fourth prong as follows: "that she suffered from differential application of work or disciplinary rules").

Assuming, *arguendo,* that Olive made the first three requisite showings in her discrimination claims that she was a white female who applied for and was qualified for the Director position but was not hired, the key inquiry is whether she has met the fourth requirement; namely, that her employer treated similarly situated employees outside her

classification more favorably.  According to the Eleventh Circuit, no plaintiff can make out a *prima facie* case by showing just that she belongs to a protected class and that she was not selected for the position.  She must also point to someone similarly situated (but outside the protected class) who was treated better.  See  *Jones v. Gerwens,* 874 F.2d 1534 (11th Cir.1989) ("The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better.")  See also *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.").

Olive named Quinton Ross as a comparator for the purpose of her discrimination claims.  Thus, she must be able to show that Ross was treated better than she in the selection of the Director position.  Both Olive and Ross went through the same selection process.  They applied for and were granted interviews for the position of Director of Adult Education.  According to Olive, the selection process was subject to the selection process as set forth in the *Shuford* Decree and incorporated in the selection committee guidelines.  Evidence clearly indicates that the selection process was held in accordance with those required guidelines.  The required number of African Americans and number of females were included, and the selection process procedure was appropriate.  (Exhibit 11 – Wilford Holt Affidavit), (Exhibit 12 – Selection Committee Appointment Form), (Exhibit 13 – Trenholm Recruiting and Selection Committee List 2003-2004).

In compliance with the guidelines, the search committee selected the ten most qualified applicants for the Adult Education Director position, including Olive and Ross, and offered them

an interview.  The committee members independently scored each applicant on his response to identical interview questions.  (Exhibit 11 – Wilford Holt affidavit).

Ross received the highest score by far; namely, 255.  (Exhibit 14).  Ross was followed by Dorothy Crawford, an African American female, who scored a total of 212 points.  (Exhibit 15). Next, was Arthur Baker, a Caucasian male, with 204 points.  (Exhibit 16).  The Plaintiff, Olive, was fourth, with a score of 194.  (Exhibit 17).  Notes on Olive's questionnaire include the following statements:  "Not sure that her budget management skills are very high" (Exhibit 17A - Score Sheet) and "[v]ery knowledgeable of the job; but may have trouble with a big (5) county group." (Exhibit 17B - Score Sheet).[7]

Following the requirements of *Shuford,* the names of the three highest scoring applicants were submitted to President Molina, and Ross was selected to receive the position.  Thus, it was the committee of three females and two Caucasians who were responsible for screening Olive from being selected as Director.  The fact that one of the three recommended was female demonstrates that the committee was not gender-discriminatory.  The fact that one of the three was Caucasian shows that the committee was not race-discriminatory.

The Adult Education Director position was selected according to a race- and gender-neutral application and interview process by a race- and gender-neutral committee.  There is simply no evidence to indicate that she was subjected to discrimination in the selection process or that Johnson, Molina and the members of the selection committee had a racial and/or gender aminus in Ross' appointment.

In summary, Olive has not, nor can she, establish a *prima facie* case because the *Shuford* process was followed.

---

[7] Olive acknowledged in her deposition that she stated in her interview: "I may have said that this position was not necessary and I'm being forced to have to apply for it in order to save my job, basically."  (Exhibit 18, Olive Deposition, pg. 129, Line 8-11).

2.        <u>**General complaints regarding job conditions do not rise to discrimination**</u>.

Olive claims that Title VII was violated in three ways.  First, she complains that the hiring process was not performed in compliance of the terms and conditions of the *Shuford* Decree and therefore was illegal[8] (Complaint - ¶¶25, 29); second, that she was discriminatorily denied a promotion for which she was highly qualified[9] (Corrected Amended Complaint, p. 3-4, ¶¶17, 19); and, third, that throughout her employment with Trenholm, she was treated differently in the terms and conditions of her employment than similarly situated African American male employees[10] (Complaint ¶20).

i.        <u>Olive failed to prove that the hiring process was illegally performed.</u>[11]

Based on a June 19, 2001 job announcement memorandum entitled "Selection of Instructional Division Directors and Program Coordinators", (Exhibit 19), Olive complains that the committee should have been composed of the College President, Provost, two Deans of Instruction, and two faculty members.  (Exhibit 20 – Olive Deposition, pp. 326-328).  A careful

---

[8]Following *Shuford, et al. v. Alabama State Board of Education, et al.,* 897 F.Supp. 1535 (M.D. Alabama, 1995), Alabama Postsecondary Education and Trenholm were subject to the terms and conditions of a Consent Decree for the hiring, promoting and reorganization of department and employee decisions, hereinafter referred to as the "*Shuford* Decree".

[9] Olive's allegations that "the discrimination against me began when it was already decided that Quinton Ross would get the job even before it was posted" and "Dr. Molina carefully picked employees to be on the selection committee who would unquestioningly carry out the plan that he and Roy Johnson had created to hire Quinton Ross as Adult Education Director, even though his only qualification was that he was a State Senator." (Exhibit 15 - Plaintiff's Responses to Defendants' First Consolidated Discovery to Plaintiff Eileen Olive, page 6) is conclusory in nature and not supported by any evidence.

[10] Although alleging that, upon information and belief, the Defendants have a history of discriminating against employees based upon their gender and race (Complaint - ¶21), the Plaintiff did not plead a pattern and practice cause of action.  The allegation is merely conclusory and unsupported by the evidenced.

[11] The Defendants submit that Olive's complaint about the selection process is not relevant to the fourth element of a prima facie case element.  The Defendants address this issue to the extent that it defeats allegations any interference with the selection committee or selection process by Molina or Johnson as alleged was based on a discriminatory intent.

review of the 2001 job announcement reveals that the announcement describes one-year, temporary positions created by Larry McCord to help with the merger between Trenholm and Patterson, a temporary faculty position for each instructional division, and thus, not subject to the Committee Guidelines or *Shuford* Decree.[12]   Therefore, the Plaintiff failed to prove that the selection committee was compromised by any improper or illegal interference by Dr. Molina or Roy Johnson.

ii.    <u>Olive failed to prove that the Defendant treated similarly situated employees outside her classification more favorably</u>

Olive alleges a long-standing history of discriminatory treatment against employees as well as against her as a Caucasian female.  Aside from a laundry list of complaints she has about working conditions, pay, bathroom accommodations and parking lot lighting, she was only able to name one comparator, that of Quinton Ross.  As described hereinabove, in order for a Title VII cause of action to stand as alleged by Olive, she must prove that as a member of a protected class, adverse employment action was taken against her based on her race or gender.  This may be proven by identifying others who are similarly situated but outside of her protected class, showing that those comparators were treated differently and proving that the reason for the different treatment was discriminatory in nature.  Olive has completely failed in this regard.  Her only named comparator, Ross, was appointed to the position of Director of Adult Education through a neutral committee selection process based upon qualifications as set forth in the job description in which she also participated.

In *Leigh v. Warner Bros., Inc.,* 212 F3d 1210, 1217 (11th Cir.2000), the Eleventh Circuit Court addressed unsupported conclusory allegations such as Olive's by declaring the following:

"This court has consistently held that conclusory allegations without specific supporting facts

---

[12] The Search Committee Guidelines Handbook clearly states that the guidelines do not apply to temporary assignments. (Exhibit 9 - Guidelines, page 4)

have no probative value." See *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985). *Id., see also* Fed. R. Civ. Proc. 56(e). The Defendants' Motion for Summary Judgment is due to be granted on Olive's failure to meet her *prima facie* case of discrimination.

### 3.    Olive failed to present evidence to establish that the Defendants' proffered reasons for employment actions were pretext.

Once a plaintiff has established her *prima facie* case and the employer has proffered a legitimate and nondiscriminatory reason for the adverse employment action, to avoid summary judgment, a plaintiff may establish pretext by undermining the credibility of the defendant's proffered explanations. See *Combs,* 106 F.3d at 1538; *Burdine* 450 U.S. at 256 (plaintiff can establish that she was the victim of intentional discrimination by "showing that the employer's proffered explanation is unworthy of credence."). Sufficient evidence that the employer's justification is false can, in appropriate circumstances, allow the trier of facts to reasonably infer that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S.Ct. 2097, 2108 (2000). Rather than relying on conclusory allegations of discrimination, the plaintiff must come forward with evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could find them unworthy of credence." *Combs,* 106 F.3d at 1538; *Cooper v. Southern Co*., 390 F.3d 695, 725 (11th Cir. 2004), *cert. denied*, 126 S.Ct. 478, 163 L.Ed.2d 363 (2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). However, a reason is not pretext for discrimination "unless it is shown ***both*** that the reason was false, ***and*** that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515) (emphasis added). Furthermore, "when a defendant has articulated several different reasons for an employment action, a plaintiff must demonstrate that each of the

proffered reasons is unworthy of credence in order to establish pretext. *Combs*, 106 F.3d at 1538.

A plaintiff cannot prove pretext by asserting baldly that he/she was better qualified than the person who received the positions at issue. See *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000). In the context of a promotion, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by race." *Id.* (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir.2000)). Furthermore, a plaintiff must show that the disparities between the successful applicant's and his own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004) (citation omitted); see also *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006) (approving this language from *Cooper*); *Brooks v. County Comm'n*, 446 F.3d 1160, 1163 (11th Cir. 2006)[13]; *Compare Aka v. Washington Hospital Center*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (*en banc*) (concluding the fact-finder may infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job"). In fact, the burden is on the plaintiff to establish that he or she was "substantially more qualified than the person promoted." *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1255 (11th Cir. 2000).

---

[13] The Supreme Court in *Ash v. Tyson Foods*, 546 U.S. 454, 456-57 (2006) expressed its concern with the test set forth in *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir.2001) that the qualifications of the comparator must virtually "jump off the page and slap you in the face" before pretext can be found. While not articulating the standard to be used, the Court made reference to a series of opinions expressing the test differently, including *Cooper v. Southern Co.*, 390 F.3d 695 (11th Cir.2004) (noting that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question").

Moreover, courts in this district have declared that it is the employer's role, not the role of the court, to identify those strengths that constitute the best qualified applicant. *Marshall v. Daleville City Bd. of Educ.*, Case No. 1:05cv386-WHA, 2006 WL 2056581 at *6 (M.D. Ala. 2006); *Haley v. Potter*, Case No. 2:03cv398-SRW, 2006 WL 861350, *4 (M.D. Ala., March 31, 2006). Finally, "when a defendant has articulated several different reasons for an employment action, a plaintiff must demonstrate that each of the proffered reasons is unworthy of credence in order to establish pretext.*" Lewis v. Chattahoochee Valley Community College*, 136 F. Supp. 2d 1232, 1239 (M.D. Ala. 2001) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)); see also *Marshall*, 2006 WL 2056581 at *8. The employer defendant's burden is "exceedingly light" and requires only that the defendant produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994); *Lett v. Reliable Ruskin*, Case No. 1:05cv479-WHA, 2006 WL 2056582, *11 (M.D. Ala. July 24, 2007).

Even if it is assumed that Olive can somehow prove by substantial evidence a *prima facie* case, which she must do before the burden shifts to the Defendants, Olive has failed to adduce sufficient evidence to demonstrate <u>both</u> a *prima facie* case of discrimination and that the Defendants' proffered reasons for the adverse employment actions were likely pretextual. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

B.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON OLIVE'S RETALIATION CLAIM BECAUSE OLIVE FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION

To establish a *prima facie* case of retaliation a Title VII plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an action which would have been

materially adverse to a reasonable employee; and, (3) there is a causal connection between the two events. *Burlington Northern & Santa Fe Railway Co., v. White*, 548 U.S. 53 (2006); *Shannon v. BellSouth Telecommunications, Inc.,* 292 F.3d 712, 715 (11th Cir. 2002) citing *Johnson v. Booker T. Washington Broad. Serv., Inc*., 234 F.3d 501, 507 (11th Cir. 2000). Olive's complaint alleges that the Defendants retaliated against her "for her legitimate exercise of her rights to complain about gender and race discrimination..." (Complaint, ¶ 48) in the hiring process she described as "illegal and discriminatory." (Complaint, ¶ 64) She further alleges that Dr. Molina and Roy Johnson acted willfully, knowingly and with the specific intent and in making concert with each other in illegal employment decisions. (Complaint, ¶ 66).

The words or actions of the employee who seeks to prove that she has engaged in "opposition" must reveal a clear and unambiguous attempt to oppose conduct that he or she believes violates Title VII. This requirement prohibits employees from relying on vague or ambiguous protests that a reasonable employer would not understand to be opposition to conduct made unlawful by Title VII. See, e.g., *Watts v. Kroger Co*., 170 F.3d 505, 511-12 (5th Cir. 1999) ("Kroger could not retaliate against Watts for making sexual harassment complaints, because it did not know she had engaged in protected activity"); *Galdieri-Ambrosini v. National Realty Dev. Corp.*, 136 F.3d 276, 292 (2nd Cir. 1998) (employee did not engage in protected activity where her complaints did not state a view that actions were based on gender and she said "nothing in her protests that could reasonably have led National Realty to understand that was the nature of her objections"); *Wichester v. Galveston Yacht Basin*, 943 F. Supp. 776, 780-81 (S.D. Tex. 1996) (plaintiff did not engage in protected activity where plaintiff complained about her pay but there was "no evidence to indicate that she opposed the pay disparity on gender grounds"), aff'd, 119 F.3d 1 (5th Cir. 1997); *Miller v. Edward Jones & Co.*, 355 F. Supp. 629,

643 (S.D.N.Y. 2005) (noting that complaints that are vague and ambiguous and do not state the nature of harassment do not constitute protected activity).

Olive alleges that she complained that the policies in the *Shuford* Decree and the policies of Trenholm Tech were not being followed in the search process and the denial of the job to her. She complains that as a result of her voicing her opinion in this regard, her job title was changed, her budgetary responsibilities were taken from her and she did not have as much control over her activities as she did before this period.

The basis for the contention by Ms. Olive that her title was changed is a diagram which is attached hereto as Exhibit 21, which shows lead teachers. This is clearly a draft of a diagram. Assuming, however, that this diagram actually went into effect, it is noteworthy that all of the individuals on the same level as Ms. Olive were classified as "lead teachers." This is simply because at that time where these individuals had been in charge of their respective programs, by virtue of the change in control of the Adult Education from K-12 to Postsecondary, a consortium was created, and the director position for which Ms. Olive had applied but for which she was not selected was charged with the responsibility of administering and overseeing this program. Therefore, the individuals who had been the directors at Trenholm Tech of the Adult Education, the directors in the various K-12 County School Systems who had been directors of Adult Education were now actually lead teachers in their particular areas. Similarly, because this was a newly created consortium, the budgetary responsibilities were centralized in this new position and certain elements of control over these Adult Education Programs were also centralized. This was not unique to Ms. Olive, but was true throughout the consortium, which included the Montgomery County Public Schools, the Elmore County Public Schools, the Bullock County

Public Schools and the Macon County Public Schools as well as the Trenholm Adult Education Program. Thus, there was no discriminatory action taken against Ms. Olive.

Additionally, the contracts for Ms. Olive continued to classify her as the Program Coordinator [of] Adult Education at Trenholm. This has been true prior to the selection of Mr. Ross and since the selection of Mr. Ross. Additionally, Ms. Olive has received regular salary increases in this position. See Olive contracts marked as Exhibit 1. Thus, there has been no retaliation in this regard.

Ms. Olive also contends that she has been subjected to retaliation because she has not been treated as well as other employees over the years. She complains, for example, that she did not have support people that others had, that her office was not in as physically pleasing condition as others, etc. These were all matters which had been occurring prior to the selection of Mr. Ross and continued thereafter; therefore, that does not evidence any retaliation on the part of the Defendants. Finally, any alleged retaliation must have been materially adverse to a reasonable employee. The Defendants respectfully submit that the complaints of Ms. Olive in this regard are not materially adverse to a reasonable individual.

## 1.    <u>No evidence against Johnson</u>

It is unclear what Ms. Olive's claims are against Dr. Johnson. Though he is sued individually and though he was sued in his official capacity but Chancellor Byrne has now been substituted for him in his official capacity, the Plaintiff has been totally unable to provide any evidence of any claim against Dr. Johnson either individually or in his official capacity.

When asked at her deposition what her claims were against Dr. Johnson she replied as follows:

Q.     Help me, please, ma'am.  I'm trying to understand what your complaint is against

Dr. Johnson.

A.    It is his responsibility to uphold the Shuford Decree and to make sure that women are not discriminated against in the State of Alabama.  That's part of his job responsibility, to make    sure that things are done in a fair way.

Q.     Are you saying that your only claim -- I understand your claim is that he's got to comply with the laws of the State of Alabama.  All right?

A.     Uh-huh.

Q.     All right.  And the federal laws, also.  Okay.  Do you have any facts that suggest that he did not comply with the laws of the State of Alabama and of the United States in this particular selection of the permanent position?

A.    I'm going to plead the fifth.  I don't know how to answer that.

Q.    You have made certain claims in this complaint that you have filed, and I am asking you, please, ma'am, tell me what facts you have, not what you've read in the paper or what Alice Martin may or may not know, but what facts you have that indicate that Dr. Roy Johnson, whom you have sued individually, did anything discriminatory in the selection of Quinton Ross to become the permanent Adult Ed. Director?

> A.    *All the investigations have not been completed. I do not have anything presently to support that, except the fact that -- word of mouth through other supervisors and knowing what was happening, you know.*
>
> Q.    *So you don't have anything --*
>
> A.    *No, I don't have --*
>
> Q.    *-- factually to support that at this time?*
>
> A.    *No.*
>
> Q.    *Okay.*

(Exhibit 22 - Olive Deposition, pg. 245-246, 251). As discussed *supra,* conclusory allegations without specific supporting facts have no probative value. *Leigh v. Warner Bros., Inc.,* 212 F.3d at 1217. Therefore, Summary Judgment on any claims against Dr. Johnson individually or Chancellor Byrne in his official capacity is due to be granted.

## 2.    No evidence against Dr. Molina

Ms. Olive complains that the committee members selected by Dr. Molina were not properly qualified, were biased in favor of Quinton Ross and had been handpicked from employees who did not meet the Shuford requirements. Dr. Molina is sued in his individual capacity even though he is now deceased. (Complaint ¶29, Exhibit 23 – Olive Deposition, 135, lines 20-23)[14]

---

[14] The Alabama Dead Man's Statute, codified in § 12-21-163, *Code of Alabama* reads as follows:
"In civil actions and proceedings, there must be no exclusion of any witness because he is a party or interested in the issue tried, except that no person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action or proceeding or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the party to whom such interest is opposed or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness or has been taken and is on file in the case. No person who is an incompetent witness under this section shall make himself competent by

There is no evidence that indicates that particular level employees were required to be selected for the committee. The Plaintiff points to a document which deals with the selection of a Division Director and has certain requirements for the selection committee for that position. However, that is a totally different job position from the one being selected in this case and is therefore not applicable herein.

There is also no evidence of any bias or indebtedness of the committee members to Dr. Molina. Absent evidence on which a reasonably minded jury could base a decision for the Plaintiff, summary judgment is appropriate as to Dr. Molina's estate in its individual capacity and for President Sam Munnerlyn who has been substituted for Dr. Molina in his official capacity due to his being the current President of Trenholm.

### 3. <u>No evidence of collusion between Molina and Committee Members or between Molina and Johnson</u>

In order to establish a *prima facie* case of a §1985(3) Conspiracy to Discriminate cause of action, the plaintiff must prove that (1) the defendants colluded (2) for the purpose of depriving a person or class of persons of equal employment opportunities, (3) the defendants acted in furtherance of their agreement, and (4) the plaintiff was injured as a result of the collusion. *Griffin v. Breckenridge,* 403 U.S. 88, 102-103 (1971).

As stated throughout this brief, there is no evidence whatsoever to support these conclusory statements by Olive. Therefore, summary judgment is appropriate.

---

transferring his interest to another."

The Defendants argue that any conversation or transaction Olive alleges she may have had with Dr. Molina are inadmissible under the Dead Man's Statutes. As discussed *supra,* following Molina's death, the Plaintiff filed a Motion for an Order to Identify Personal Representative and Allow Substitution for liability under Molina as sued in his individual capacity. Plaintiff's motion was denied with leave to re-file in compliance with Federal Rule of Civil Procedure 25(a)(1). Out of the abundance of caution, the Defendants allege that any conversations between she and Molina are inadmissible. Nevertheless, in the event the Court finds transactions between Olive and Molina are admissible, the Defendants that Olive never complained of gender or race discrimination to Molina with regard to being denied the appointment as Director of Adult Education or subsequent retaliation based on race or gender.

## V.     CONCLUSION

For the above and foregoing reasons these Defendants respectfully submit that summary judgment is due to be granted for all Defendants on all counts.


Respectfully submitted,


*/s/ Terrie S. Biggs*
ROBERT T. MEADOWS, (MEA012)
TERRIE S. BIGGS (BIG006)
*Attorneys for the Defendants*


OF COUNSEL:
Capell & Howard, P.C.
P.O. Box 2069
Montgomery, Alabama 36102-2069
Telephone (334) 241-8091
Facsimile (334) 241-8291


Troy King, Attorney General
Margaret L. Fleming, Assistant Attorney General
Office of Attorney General
11 S. Union Street
Montgomery, AL 36130-0152


Joan Y. Davis
Alabama Department of Postsecondary Education
401 Adams Avenue, Suite 280
Montgomery, AL 36104

1121380

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true and correct copy of the foregoing has been served upon each of the following persons electronically via CM/ECF filing system on this the 20th day of June, 2008:

Ms. Candis A. McGowan, Esq.          Nancy E. Perry
Wiggins, Childs, Quinn & Pantazis      P. O. Box 4177
The Kress Building              Montgomery, AL 36103-4177
301 19th Street
Birmingham, Alabama 35203

Gary E. Atchison              Monica Arrington
P. O. Box 2002               P. O. Box 250091
Montgomery, AL 36102      Montgomery, AL 36125


                    */s/ Terrie S. Biggs*
                    OF COUNSEL